360 A.2d 598
**COMMONWEALTH of Pennsylvania**
**v.**
**Eugene MYRICK, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 16, 1976.

Decided July 6, 1976.

156

Stephen P. Gallagher, Philadelphia, for appellant.

Marianne E. Cox, Asst. Dist. Atty., Steven Goldblatt, Asst. Dist. Atty., Chief, Appeals Division, Abraham J. Gafni, Deputy Dist. Atty. for Law, F. Emmett Fitzpatrick, Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Eugene Myrick was found guilty, following a nonjury trial, of murder in the second degree, aggravated assault and possession of a firearm without a license. On this appeal,[1] he alleges (1) that his waiver of rights under Pa.R.Crim.P. 1100 was invalid, (2) that there was insufficient evidence to sustain the murder conviction and (3) that the Commonwealth was improp-

---

1. We hear this case under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975).

erly permitted to impeach one of its witnesses. Finding no merit to any of these claims, we affirm.

Appellant was arrested on November 10, 1973. By the terms of rule 1100,[2] the Commonwealth was obligated to try him within 270 days of his arrest, in this case August 7, 1974. On August 1, 1974, the Commonwealth asked appellant, through his attorney, to agree to a thirty day extension of time for trial to permit the homicide detective who had investigated the case to take his scheduled vacation.[3] Although the last day for trial under rule 1100 was August 7, 1974, appellant was told at the hearing on the Commonwealth's request that the last day for trial was August 12, 1974. To confuse the issue further, the formal statement of agreement to extend the time for trial read into the record refers to the last day for trial as "8/4/74." Petitioner agreed to the extension which he now challenges.

■■ Appellant argues that rule 1100 is "mandatory" and that the trial court must satisfy itself that the Commonwealth has exercised "due diligence" as required by section (c) of rule 1100 before granting an extension of time under the rule. Although we have never ruled on this issue, we have no difficulty rejecting this contention. Rule 1100, like the right to a speedy trial which it protects, may be waived. The "due diligence" standard of rule 1100(c), which allows involuntary extension of time for trial without violating the rule, operates only when the Commonwealth seeks, without the defendant's

2. Pa.R.Crim.P. 1100 provides:

"(a)(1) Trial in a court case in which written complaint is filed . . . after June 30, 1973 but before July 1, 1974 shall commence no later than two hundred seventy [270] days from the date on which the complaint is filed."

In appellant's case the 270 day period did not begin running until November 10, 1973, because he was at large and, therefore, unavailable during the period from complaint until arrest. See Pa.R. Crim.P. 1100(d)(1).

3. At the time of the request, appellant's trial was scheduled to begin August 5, 1974.

consent, an extension of time in which to bring him to trial. Section (c) has no bearing on the validity of the extension agreed to in this case.[4] We find no error in the trial court's refusal to hold that rule 1100 may not be waived.

The Commonwealth has the burden of establishing the validity of any waiver. *Commonwealth v. Cobbs,* 452 Pa. 397, 305 A.2d 25 (1973); *Commonwealth v. Goldsmith,* 438 Pa. 83, 263 A.2d 322 (1970). In our Rules of Criminal Procedure, we have identified some formal requirements for valid waivers of important rights. In order for the Commonwealth to show a waiver of presentment to the grand jury there must be a dated and written waiver signed by the defendant and defense counsel, if represented, or executed in open court, if unrepresented. Pa.R.Crim.P. 215. A waiver of a jury trial requires the consent of defense counsel, a recorded colloquy showing the waiver to be voluntary and a dated written waiver signed by defendant and defense counsel. Pa.R.Crim.P. 1101. A guilty plea, which waives many important rights, requires a recorded, in court colloquy showing the plea to be knowing, intelligent and voluntary. Pa.R.Crim.P. 319; *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974). All of these formal requirements for a waiver are intended to assure one thing —that the decision to waive these rights is the informed and voluntary act of the defendant and can be shown to be such by reference to the record. So long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity. Absent this record indication of validity, the waiver will be ineffective. Moreover, these are merely formal indications of validity. In any waiver situation, the defendant may still at-

4. The trial court, in this case, did not act under authority of section (c) because this was not an involuntary extension.

tempt to prove that the waiver is invalid by showing that it was unknowing, unintelligent or involuntary.

■■  Rule 1100 is a rule of criminal procedure designed to implement and protect a defendant's constitutional right to a speedy trial. Its particular terms, however, are neither directly granted by nor required by the Constitution. Nevertheless, the basic requirements for making a valid waiver of constitutional rights, as outlined above, are instructive in our consideration of the validity of a claimed waiver of the protections of rule 1100. Thus a waiver which would be formally adequate to waive a constitutional right would, *a fortiori*, be sufficient under the Federal Constitution to waive the protection of rule 1100. In this case the record contains not only an on-record colloquy but also a statement signed by the defendant and endorsed upon the indictment indicating the defendant's willingness that trial time be extended. Thus the Commonwealth's claim that appellant waived the protection of rule 1100 is formally valid, for either the colloquy or the signed statement would by themselves be sufficient record indication that the waiver was, prima facie, informed and voluntary.

■  The appellant, however, in a pro se motion filed before trial, and here on counselled appeal, claims that the waiver was involuntary because his agreement to extend the time under rule 1100 was improperly obtained by the Commonwealth's representation that August 12, 1974, was the last day for trial. He explains that on August 1, 1974, he thought the detective was already on vacation but that the Commonwealth could easily have returned him to Philadelphia by August 12, 1974, eleven days from the date of the extension hearing. Had he known that the actual last day under rule 1100 was August 7, 1974, he would not have agreed to the extension because the Commonwealth might not have been able to secure the detective's appearance.

The argument, however, is fatally flawed. The detective was not on vacation on August 1, 1974, and this fact was clearly stated at the hearing held on that date. The Commonwealth stated that if the extension were not agreed to, it would simply ask the Police Commissioner to cancel the detective's vacation. Appellant was asked whether he wanted to go to trial on August 5, 1974, the scheduled date, or whether he would agree to a thirty day extension so as not to cause cancellation of the detective's vacation.

Moreover, the record of the hearing establishes that there was confusion concerning the last day under rule 1100. Twice during the hearing, the date was stated to be August 12, 1974. Yet the statement of agreement read into the record by appellant's attorney used the date "8/4/74" and the written agreement to extend returned to the date "8/12/74." If the actual date were crucial to appellant, the conflict of dates used at the hearing would have prompted him or his counsel to inquire concerning the true date.

Appellant has attempted to show that his recorded waiver was nonetheless involuntary because of the Commonwealth's misrepresentation concerning the final date for trial under rule 1100. Appellant has, however, failed to convince either the hearing court or the post-verdict motion court that the discrepancy in dates was crucial to his waiver. We are satisfied that the Commonwealth has met its burden of proving the waiver valid.

Appellant's sufficiency argument is based on a misunderstanding of the law. He claims that the Commonwealth offered evidence which was as consistent with innocence as with guilt and, therefore, did not prove the crime charged. The assertion is based upon conflicts in the testimony of two of the Commonwealth's witnesses. One witness, a friend of appellant, testified, variously, that he did or did not see appellant with a gun, and that he did or did not see appellant fire the gun at decedent

as decedent fled after an abortive attempt to shoot appellant. A second witness testified that decedent was not armed and that appellant, without any warning or provocation, shot both the witness and decedent, causing decedent's death.

Appellant claims that, giving equal credence to both the most and the least favorable versions of the killing,[5] the Commonwealth has not proven the crime charged. This argument is completely without merit.

The credibility of witnesses is for the factfinder.[6] It may believe all, part, or none of a witness' testimony.[7] It is apparent that the trial judge believed the witness whose testimony was internally consistent and adverse to appellant and chose to disbelieve the witness whose testimony was both internally inconsistent and inconsistent with the rest of the Commonwealth's case.

Moreover, even accepting most of the favorable witness' testimony, the factfinder could properly have returned a verdict of murder in the second degree. The witness testified that decedent pulled out a gun, attempted to fire it three or four times, and then turned to flee when the gun misfired for the last time. Appellant shot decedent at a distance of from fifteen to twenty feet.

5.  Appellant does not argue that the version of the killing that is least favorable to him is insufficient to sustain the conviction. His only argument is that we must give equal weight to all versions of the killing presented in the Commonwealth's case in chief.

6.  "[I]t is the exclusive province of the trier of facts to pass on the credibility of witnesses and the weight to be accorded their testimony."

    *Commonwealth v. Smith,* 457 Pa. 638, 641, 326 A.2d 60, 61 (1974); *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972).

7.  *See Commonwealth v. Smith,* 457 Pa. 638, 641, 326 A.2d 60, 61 (1974); *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972).

These facts, even if accepted as true, do not necessarily make out a claim of self-defense.[8]

Finally, appellant claims that the Commonwealth impermissibly impeached the "favorable" witness, following the trial court's rejection of a plea of surprise, by calling a second witness who gave a contradictory version of the killing. This claim, too, is without merit.

> "It is well settled a party may contradict his own witness by independent evidence showing facts to be different from those testified to by such witness. . . . Such rule does not violate the general rule that one may not impeach his own witness because to contradict is not to impeach. Impeachment is directed to the credibility of the witness for the purpose of discrediting him. It ordinarily furnishes no factual evidence. Contradiction on the other hand, is directed to the accuracy of testimony and supplies additional factual evidence to be considered along with such testimony. Such evidence as is relevant to the issues may not be excluded because it contradicts another witness called by the same party, whether such witness is friendly or hostile."

*Talley v. Richart*, 353 Mo. 912, 917, 185 S.W.2d 23, 26 (1945), quoted with approval in *Commonwealth v. Staino*, 204 Pa.Super. 319, 327–28, 204 A.2d 664, 668 (1964). *Commonwealth v. Smith*, 424 Pa. 544, 548–49, 227 A.2d 653, 656 (1967).

Judgment of sentence affirmed.

8. A valid claim of self-defense requires that the person using deadly force (1) reasonably believed himself to be in danger of serious bodily injury or death, (2) believed that deadly force was necessary to protect himself, (3) did not provoke the person against whom he defended himself, and (4) violated no duty to retreat. See 18 Pa.C.S.A. 505 (1973); *Commonwealth v. Johnston*, 438 Pa. 485, 489, 263 A.2d 376, 379 (1970). In this case appellant shot decedent, according to the most favorable testimony, after decedent had turned to flee. In these circumstances, the trier of fact could properly reject a claim of self-defense because appellant no longer needed to use deadly force to protect himself.